IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| **PORTUS SINGAPORE PTE LTD AND PORTUS PTY LTD.**<br><br>　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>**ZMODO TECHNOLOGY CORPORATION LIMITED,**<br><br>　　　　　　　　　Defendant. | Civil Action No. 2:19-cv-2029<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

This is an action for patent infringement in which Plaintiffs Portus Singapore Pte Ltd. and Portus Pty Ltd. (collectively, "Plaintiffs") accuse Defendant, Zmodo Technology Corporation Limited, of infringing U.S. Patent Nos. 8,914,526 (the "'526 Patent") and 9,961,097 (the "'097 Patent") (collectively, the "Asserted Patents"), alleging as follows:

## PARTIES

1.　　Plaintiff Portus Singapore Pte Ltd. is a company organized under the laws of the Republic of Singapore.

2.　　Plaintiff Portus Pty Ltd. is a subsidiary of Portus Singapore Pte Ltd., and a company organized under the laws of Australia.

3.　　Upon information and belief, Defendant Zmodo Technology Corporation Limited, is a corporation organized and existing under the laws of the State of Nevada, with its principle place of business at 1401 Interstate Dr., Suite B., Champaign, IL 61822. Defendant may be served via its registered agent for service of process: The Corporate Trust Company of Nevada, 701 S. Carson St., Ste. 200, Carson City, NV 89701.

1

## JURISDICTION AND VENUE

4.    This is an action for infringement of the Asserted Patents arising under 35 U.S.C. §§ 271(a)-(b), 281, and 284 - 85. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1331 and §1338(a).

5.    Venue is proper in this district under 28 U.S.C. § 1400(b). Upon information and belief, Defendant has a regular and established place of business and has committed acts of patent infringement in this district.

6.    Upon information and belief, Defendant is subject to this Court's specific and general personal jurisdiction pursuant to due process and/or the Illinois Long Arm Statute, due at least to its substantial business in this forum, including: (i) at least a portion of the infringements alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, and/or deriving substantial revenue from goods and services provided to individuals in Illinois and in this Judicial District.

## U.S. PATENT NO. 8,914,526

7.    On December 16, 2014, United States Patent No. 8,914,526 was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "Local and Remote Monitoring Using a Standard Web Browser." A true and correct copy of the '526 Patent is attached hereto as Exhibit A.

8.    Charles Cameron Lindquist and Timothy John Lindquist are the inventors of the '526 Patent.

9.    Portus Singapore Pte Ltd., is the owner by assignment of the '526 Patent with all rights in and to that patent.

10.    Portus Pty Ltd. is the exclusive licensee of the '526 Patent.

11. Upon information and belief, to the extent any marking was required by 35 U.S.C. § 287, Plaintiffs have complied with such requirements.

12. Defendant directly or through intermediaries, makes, uses, imports, sells, and/or offers for sale products and or/systems (*i.e.*, the Pivot and Pivot Cloud (the "Accused Instrumentalities")) that infringe one or more claims of the '526 Patent. When placed into operation, the Accused Instrumentalities infringe claims 1, 3, 4, 5, 12, 25, 44, 45, 46, 47, 48, 49, 50, 54 and 59 of the '526 Patent. Additionally, Defendant induces the infringement of infringe claims 1, 3, 4, 5, 12, 25, 44, 45, 46, 47, 48, 49, 50, 54 and 59 of the '526 Patent by its customers using the Accused Instrumentalities.

## U.S. PATENT NO. 9,961,097

13. On May 1, 2018, United States Patent No. 9,961,097 was duly and legally issued by the United States Patent and Trademark Office for an invention entitled "System for Remote Access of a User Premises." A true and correct copy of the '097 Patent is attached hereto as Exhibit B.

14. Charles Cameron Lindquist and Timothy John Lindquist are the inventors of the '097 Patent.

15. Portus Singapore Pte Ltd., is the owner by assignment of the '097 Patent with all rights in and to that patent.

16. Portus Pty Ltd. is the exclusive licensee of the '097 Patent.

17. Upon information and belief, to the extent any marking was required by 35 U.S.C. § 287, Plaintiffs have complied with such requirements.

18. Defendant directly or through intermediaries, makes, uses, imports, sells, and/or offers for sale the Accused Instrumentalities that infringe one or more claims of the '097 Patent.

When placed into operation, the Accused Instrumentalities infringe claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, and 22 of the '097 Patent.  Additionally, Defendant induces the infringement of claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, and 22 of the '097 Patent by its customers using the Accused Instrumentalities.

## COUNT I
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 8,914,526

19. Upon information and belief, Defendant has been and is now infringing claims 1, 3, 4, 5, 12, 25, 44, 45, 46, 47, 48, 49, 50, 54 and 59 of the '526 Patent in the State of Illinois, in this judicial district, and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, selling, and/or offering for sale the Accused Instrumentalities to the injury of Plaintiffs.  Defendant is directly infringing, literally infringing, and/or infringing the '526 Patent under the doctrine of equivalents.  Defendant is thus liable for direct infringement of the '526 Patent pursuant to 35 U.S.C. § 271(a).

20. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 1 of the '526 Patent. They are a system for remote access of home networks in respective user premises comprising an Internet browser hardware device including a processor running an Internet browser; an extranet located external to said user premises and accessible via said Internet browser; a plurality of connection gateways each comprising a hardware processor, each of at least a subset of which is located in a respective one of the user premises and is part of the respective home network of the respective user premises; and at least one communications server that each comprises a hardware processor located in said extranet and adapted to interconnect on demand with said connection gateways; wherein: each of the at least the subset of the plurality of connection gateways is accessible by the at least one communications server and is communicatively coupled to one or more networked components of

the respective home network in which the respective connection gateway is located, the at least one communications server not being communicatively coupleable to the one or more networked components of the respective home network; and responsive to user input of a Uniform Resource Locator (URL) in accordance with which said Internet browser accesses a predetermined address on said extranet to which address the URL corresponds, in which accessing said Internet browser provides authorization data, one of said at least one communications server subsequently: determines which one of said home networks in which one of said connection gateways is located said authorization data indicates authority to at least one of control and monitor; and creates a new communications session between said communications server and said one of said connection gateways located in said determined one of said home networks to at least one of control and monitor operation of at least one service in said home network, by which communications session the extranet: obtains information contained within the home network from the connection gateway of the determined home network; and serves a webpage to the Internet browser via which the information from the connection gateway of the determined home network is provided to said Internet browser. *See* Ex. A-1 Figs. 1-18.

21.     The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 3 of the '526 Patent. They meet the limitations of claim 1 and further, wherein at least one of said networked components is a monitoring service located within said determined one of said home networks, and the operation of the at least one service includes operation of the monitoring device. *See* Ex. A-1 Figs. 1-18.

22.     The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 4 of the '526 Patent. They meet the limitations of claim 1 and

further, wherein said communications server utilizes a telecommunications network to interconnect with said connection gateway. *See* Ex. A-1 Figs. 1-18.

23. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 5 of the '526 Patent. They meet the limitations of claim 1 and further, wherein authentication to access said extranet is required only once per Internet browser session (e.g., the user need only log in once). *See* Ex. A-1 Figs. 1-18.

24. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 12 of the '526 Patent. They meet the limitations of claim 1 and further, wherein the connection gateway acts as a hub and Internet connection mechanism for said networked components, including information appliances (e.g., the Pivot acts as a hub and internet connection for the connected devices, such as door and windows sensors). *See* Ex. A-1 Figs. 1-18.

25. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 25 of the '526 Patent. They meet the limitations of claim 1 and further, wherein: said system further comprises a device activating a security condition upon the occurrence of a predetermined event in said user premises in which said determined home network is located; and upon the occurrence of said predetermined event, said device notifies said connection gateway located in said determined one of said home networks and transfers event information on said predetermined event to said connection gateway located in said determined one of said home networks and said connection gateway located in said determined one of said home networks establishes an interconnection with said communications server and transfers said event information via said communications server for storage on the extranet for later interrogation

by a user of said system and initiates predetermined alert notification actions. *See* Ex. A-1 Figs. 1-18.

26. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 44 of the '526 Patent. They meet the limitations of claim 1 and further, wherein the at least one service includes a security monitoring service. *See* Ex. A-1 Figs. 1-18.

27. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 45 of the '526 Patent. They meet the limitations of claim 1 and further, wherein the at least one service includes a video surveillance service. *See* Ex. A-1 Figs. 1-18.

28. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 46 of the '526 Patent. They meet the limitations of claim 1 and further, wherein the at least one service includes an automation and control service (e.g., the video capture is automated). *See* Ex. A-1 Figs. 1-18.

29. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 49 of the '526 Patent. They meet the limitations of claim 1 and further, where the a least one service implements monitoring or control of a plurality of devices connected to at least one network interconnected with connection gateway (e.g., the Pivot provides monitoring and control for multiple devices such as window and door sensors). *See* Ex. A-1 Figs. 1-18.

30. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 50 of the '526 Patent. They meet the limitations of claim 1 and further, where the Internet browser is on at least one of a mobile phone with web browsing

capability, a WebPhone, and Portable Digital Assistant (PDA) (e.g., the Pivot website can be accessed from a smart phone). *See* Ex. A-1 Figs. 1-18.

31.     The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 54 of the '526 Patent. They meet the limitations of claim 1 and further, wherein the extranet serves a webpage to the Internet browser, which webpage is user-interactable for input of instructions in accordance with which the one of said communications server communicates with the connection gateway of the determined home network, in accordance with which communication the connection gateway controls one or more of the networked components of the respective home network in which the respective connection gateway is located (e.g., the server serves a webpage which includes controls allowing the networked devices to be controlled, such as smart lighting). *See* Ex. A-1 Figs. 1-18.

32.     The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 59 of the '526 Patent. The Accused Instrumentalities provide a system for remote access of home networks in respective user premises comprising: a mobile device comprising a hardware processor that provides a user interface; a plurality of connection gateways, each comprising at least one hardware processor and each of at least a subset of which is located in a respective one of the user premises and is part of the respective home network of the respective user premises; and an extranet comprising at least one hardware device and that is (a) located external to said user premises, (b) accessible via said mobile device via a wireless network and an Internet protocol connection, and (c) adapted to interconnect on-demand with said connection gateways; wherein: each of the at least the subset of the plurality of connection gateways is accessible by the extranet and is communicatively coupled to one or more networked components of the respective home network in which the respective connection gateway is located,

the extranet not being directly communicatively coupleable to the one or more networked components of the respective home network; and responsive to user input, using the user interface, of a Uniform Resource Locator (URL) in accordance with which said mobile device accesses a predetermined address on said extranet to which address the URL corresponds, in which accessing said mobile device provides authorization data, said extranet subsequently: determines which one of said home networks in which one of said connection gateways is located said authorization data indicates authority to at least one of control and monitor; creates a new communications session between said extranet and said one of said connection gateways located in said determined one of said home networks to at least one of control and monitor operation of at least one of the networked components in said home network; obtains information contained within the home network from the connection gateway of the determined home network; and using a web server, serves to the mobile device the information from the connection gateway of the determined home network, for a display in the user interface that is based on the information. *See* Ex. A-1 Figs. 1-18.

33. As a result of Defendant's direct infringement of the '526 Patent, Plaintiffs have suffered monetary damages and are entitled to a money judgment in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the court, and Plaintiffs will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.

34. Unless a permanent injunction is issued enjoining Defendant and its agents, servants, employees, representatives, affiliates, and all others acting on in active concert therewith from infringing the '526 Patent, Plaintiffs will be greatly and irreparably harmed.

## COUNT II
## DIRECT INFRINGEMENT OF U.S. PATENT NO. 9,961,097

35. Upon information and belief, Defendant has been and is now infringing claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, and 22 of the '097 Patent in the State of Illinois, in this judicial district, and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, selling, and/or offering for sale the Accused Instrumentalities to the injury of Plaintiffs. Defendant is directly infringing, literally infringing, and/or infringing the '097 Patent under the doctrine of equivalents. Defendant is thus liable for direct infringement of the '097 Patent pursuant to 35 U.S.C. § 271(a).

36. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 1 of the '097 Patent. The Accused Instrumentalities provide a system for remote access of a user premises comprising: a first hardware processing circuitry running an access browser module; a second hardware processing circuitry located in a first network; and a connection gateway that is located in, and is part of a local network of, the user premises; wherein: the second hardware processing circuitry is external to the user premises, is accessible via the access browser module, and is configured to communicate on-demand with the connection gateway; the connection gateway is integrated with or communicatively coupled to one or more networked components of the local network of the user premises; and the system is configured such that user-input of a Uniform Resource Locator (URL), in accordance with which the first hardware processing circuitry, using the access browser module, accesses an address on the first network, begins a sequence in which the second hardware processing circuitry responsively serves to the first hardware processing circuitry, via the access browser module, information regarding at least one of the one or more networked components of the local network, which information the second hardware processing circuitry obtains from the connection gateway

without a direct communicative coupling between the second hardware processing circuitry and the at least one networked component of the local network, wherein the sequence includes the first hardware processing circuitry transmitting to the second hardware processing circuitry authentication data indicating authority to access the at least one networked component of the local network, the transmission of the authentication data being required for the serving of the information to the first hardware processing circuitry, and wherein: the user premises is one of a plurality of user premises; the connection gateway is one of a plurality of connection gateways, each of which is located in, and is part of a respective local network of, a respective one of the plurality of user premises, and to each of which the second hardware processing circuitry is configured to connect; and the sequence further including the second hardware processing circuitry determining which one of the local networks the authentication data indicates authority to access, the sequence further including the second hardware processing circuitry establishing a new communication session between the first hardware processing circuitry and the connection gateway of the respective local network that the authentication data indicates authority to access upon verification of the authentication data, and wherein the second hardware processing circuitry receives, via the connection gateway, selected information from at least one of the networked components of the local network of the user premises, and stores the selected information in the first network for subsequent review by a user associated with the user premises, without requiring the user to provide the authentication data, and wherein the authority to access the at least one networked component of the local network by transmitting the authentication data also provides authority to access and review the previously stored selected information in the first network via the access browser module. *See* Ex. B-1 Figs. 1- 13.

37. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 2 of the '097 Patent. They meet the limitations of claim 1 and further, wherein the access browser module is an Internet browser. *See* Ex. B-1 Figs. 1- 13.

38. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 3 of the '097 Patent. They meet the limitations of claim 1 and further, wherein the first network is an extranet. *See* Ex. B-1 Figs. 1- 13.

39. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 4 of the '097 Patent. They meet the limitations of claim 1 and further, wherein the second hardware processing circuitry is configured to interconnect on-demand with the connection gateway. *See* Ex. B-1 Figs. 1- 13.

40. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 5 of the '097 Patent. They meet the limitations of claim 1 and further, wherein the second hardware processing circuitry is not communicatively coupleable to the at least one networked component of the local network. *See* Ex. B-1 Figs. 1- 13.

41. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 6 of the '097 Patent. They meet the limitations of claim 1 and further, wherein the second hardware processing circuitry stores information identifying a plurality of users, information identifying respective ones of the plurality of user premises which respective ones of the users are permitted to access, and, for each of the connection gateways, respective connection information for communicating with the respective connection gateway. *See* Ex. B-1 Figs. 1- 13.

42. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 8 of the '097 Patent. They meet the limitations of claim 1 and

further, wherein the second hardware processing circuitry obtains the information from the connection gateway via the new communications session. *See* Ex. B-1 Figs. 1- 13.

43.  The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 9 of the '097 Patent. They meet the limitations of claim 1 and further, wherein the URL identifies the address. *See* Ex. B-1 Figs. 1- 13.

44.  The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 10 of the '097 Patent. They meet the limitations of claim 1 and further, wherein the second hardware processing circuitry includes a plurality of components distributed in the first network. *See* Ex. B-1 Figs. 1- 13.

45.  The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 11 of the '097 Patent. They meet the limitations of claim 1 and further, wherein the first hardware processing circuitry is external to the user premises. *See* Ex. B-1 Figs. 1- 13.

46.  The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 15 of the '097 Patent.  They meet the limitations of claim 1 and further, wherein the first hardware processing circuitry is embodied in a mobile device. *See* Ex. B-1 Figs. 1- 13.

47.  The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 16 of the '097 Patent. They meet the limitations of claim 1 and further, wherein the information is presented as a webpage by the access browser module. *See* Ex. B-1 Figs. 1- 13.

48.  The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 17 of the '097 Patent. They meet the limitations of claim 1 and

further, wherein the accessing includes at least one of controlling and monitoring one or more of the networked components. *See* Ex. B-1 Figs. 1- 13.

49. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 18 of the '097 Patent. They meet the limitations of claim 1 and further, wherein the selected information is event information captured by one of the networked components as a result of the occurrence of a predetermined event detected by one of the networked components. *See* Ex. B-1 Figs. 1- 13.

50. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 19 of the '097 Patent. The Accused Instrumentalities provide the system for remote access of a user premises comprising: a first hardware processing circuitry including a user interface; a second hardware processing circuitry located in a first network; and a connection gateway that is located in, and is part of a local network of, the user premises; wherein: the second hardware processing circuitry is external to the user premises, is accessible by the first hardware processing circuitry, and is configured to communicate on-demand with the connection gateway; the connection gateway is integrated with or communicatively coupled to one or more networked components of the local network of the user premises; and the system is configured such that user-input of a Uniform Resource Locator (URL) using the user interface, in accordance with which the first hardware processing circuitry accesses an address on the first network, begins a sequence in which the second hardware processing circuitry responsively serves to the first hardware processing circuitry, for display using the user interface, information regarding at least one of the one or more networked components of the local network, which information the second hardware processing circuitry obtains from the connection gateway without a direct communicative coupling between the second hardware processing circuitry and the at least one

networked component of the local network, wherein the sequence includes the first hardware processing circuitry transmitting to the second hardware processing circuitry authentication data indicating authority to access the at least one networked component of the local network, the transmission of the authentication data being required for the serving of the information to the first hardware processing circuitry, and wherein: the user premises is one of a plurality of user premises; the connection gateway is one of a plurality of connection gateways, each of which is located in, and is part of a respective local network of, a respective one of the plurality of user premises, and to each of which the second hardware processing circuitry is configured to connect; and the sequence further including the second hardware processing circuitry determining which one of the local networks the authentication data indicates authority to access, the sequence further including the second hardware processing circuitry establishing a new communication session between the first hardware processing circuitry and the connection gateway of the respective local network that the authentication data indicates authority to access upon verification of the authentication data, and wherein the second hardware processing circuitry receives, via the connection gateway, selected information from at least one of the networked components of the local network of the user premises, and stores the selected information in the first network for subsequent review by a user associated with the user premises, without requiring the user to provide the authentication data, and wherein the authority to access the at least one networked component of the local network by transmitting the authentication data also provides authority to access and review the previously stored selected information in the first network via the user interface. *See* Ex. B-1 Figs. 1- 13.

51.     The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 20 of the '097 Patent. They meet the limitations of claim 19


and further, wherein the accessing includes at least one of controlling and monitoring one or more of the networked components. *See* Ex. B-1 Figs. 1- 13.

52. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 21 of the '097 Patent. The Accused Instrumentalities provide system of claim 19 wherein the selected information is event information captured by one of the networked components as a result of the occurrence of a predetermined event detected by one of the networked components. *See* Ex. B-1 Figs. 1- 13.

53. The use of the Accused Instrumentalities by Defendant, its resellers, or end-user customers, directly infringes claim 22 of the '097 Patent. They meet the limitations of claim 19 and further, wherein the first network is an extranet. *See* Ex. B-1 Figs. 1- 13.

54. As a result of Defendant's direct infringement of the '097 Patent, Plaintiffs have suffered monetary damages and are entitled to a money judgment in an amount adequate to compensate for Defendant's infringement, but in no event less than a reasonable royalty for the use made of the invention by Defendant, together with interest and costs as fixed by the court, and Plaintiffs will continue to suffer damages in the future unless Defendant's infringing activities are enjoined by this Court.

55. Unless a permanent injunction is issued enjoining Defendant and its agents, servants, employees, representatives, affiliates, and all others acting on in active concert therewith from infringing the '097 Patent, Plaintiffs will be greatly and irreparably harmed.

## COUNT III
## INDUCED INFRINGEMENT OF THE ASSERTED PATENTS

56. Upon information and belief, Defendant has been and is now inducing the infringement by its resellers and end-use customers of claims 1, 3, 4, 5, 12, 25, 44, 45, 46, 47, 48, 49, 50, 54 and 59 of the '526 Patent and claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20,

21, and 22 of the '097 Patent in the State of Illinois, in this Judicial District, and elsewhere in the United States, by, among other things, directly or through intermediaries, making, using, importing, selling and/or offering for sale the Accused Instrumentalities to the injury of Plaintiffs. Defendant's resellers and end-use customers are directly infringing, literally infringing, and/or infringing the Asserted Patents under the doctrine of equivalents. Defendant is thus liable for infringement of the Asserted Patents pursuant to 35 U.S.C. § 271(b).

57. As shown above, Defendant has and continues to indirectly infringe the Asserted Patents by inducing the infringement by its end-users and resellers of claims 1, 3, 4, 5, 12, 25, 44, 45, 46, 47, 48, 49, 50, 54 and 59 of the '526 Patent and claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, and 22 of the '097 Patent in accordance with 35 U.S.C. 271(b).

58. As shown above, Defendant, its resellers, distributors, and end-users of the Accused Instrumentalities have engaged in and currently engage in activities that constitute direct infringement of claims 1, 3, 4, 5, 12, 25, 44, 45, 46, 47, 48, 49, 50, 54 and 59 of the '526 Patent and claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, and 22 of the '097 Patent.

59. As shown above, the operation and use of the by Defendant, its resellers, or end-user customers of the Accused Instrumentalities constitutes a direct infringement of claims

60. Defendant's affirmative act of selling and/or offering for sale the Accused Instrumentalities and providing instruction manuals, advertisement of the infringing features, and support for the Accused Instrumentalities have induced and continues to induce Defendant's resellers and end users to use the Accused Instrumentalities in their normal and customary way to infringe claims 1, 3, 4, 5, 12, 25, 44, 45, 46, 47, 48, 49, 50, 54 and 59 of the '526 Patent and claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, and 22 of the '097 Patent.

61. Through its making, selling, and/or offering for sale the Accused Instrumentalities, Defendant specifically intends that its resellers and end-users directly infringe claims 1, 3, 4, 5, 12, 25, 44, 45, 46, 47, 48, 49, 50, 54 and 59 of the '526 Patent and claims 1, 2, 3, 4, 5, 6, 8, 9, 10, 11, 15, 16, 17, 18, 19, 20, 21, and 22 of the '097 Patent. Defendant has had knowledge of the Asserted Patents since at least the filing of this complaint and actually induces others, such as resellers and end-use customers, to directly infringe by using, selling, supplying, and or distributing the Accused Instrumentality within the United States. Defendant is aware since at least the filing of this complaint that such actions would induce actual infringement. Furthermore, Defendant remains aware that these normal and customary activities would infringe the Asserted Patents.

62. For example, in connection with the sale and/or offering for sale of the Accused Instrumentalities, Defendant provides manuals and support to resellers and end-use customers regarding the user and operation of the Accused Instrumentalities. Specifically, Defendant provides support, *see e.g.*, http://support.zmodo.com/index.php?action=artikel&cat=2&id=146&artlang=en; *see also* Ex. A-1 and Ex. B-1. When end-users follow such instructions and support, they directly infringe the Asserted Patents. Defendant knows or should have known that by providing such instructs and support, resellers and end-use customers follow these instructions and support and directly infringe the Asserted Patents.

63. Accordingly, Defendant has performed and continues to perform acts that constitute indirect infringement, and would induce actual infringement, with the knowledge of the Asserted Patents and with the knowledge or willful blindness to the fact that the induced acts would constitute infringement.

## DEMAND FOR JURY TRIAL

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter:

1. A judgment in favor of Plaintiffs that Defendant has infringed the Asserted Patents;

2. A judgment in favor of Plaintiffs that Defendant has induced its resellers and end-users to infringe the Asserted Patents;

3. A permanent injunction enjoining Defendant and its officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement, inducing the infringement of, or contributing to the infringement of the Asserted Patents, or such other equitable relief the Court determines is warranted;

4. A judgment and order requiring Defendant pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendant's infringement of the Asserted Patents as provided under 35 U.S.C. § 284, and an accounting of ongoing post-judgment infringement; and

5. any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

DATED February 7, 2019.                    Respectfully submitted,

By: */s/ David R. Bennett*
David R. Bennett
Illinois Bar No. 6244214
**DIRECTION IP LAW**
P.O. Box 14184
Chicago, Illinois  60614
Tel: (312) 291-1667
dbennett@directionip.com

**ATTORNEYS FOR PLAINTIFFS PORTUS SINGAPORE PTE LTD. AND PORTUS PTY LTD.**